Duane REOTT and Patty Reott,
Husband and Wife,
Appellants

v.

ASIA TREND, INC., Clam Corporation (As Successor–in–Interest to USL Outdoor Products, Inc.), USL Outdoor Products, Inc., Remington Arms Company, Inc., RA Brands, LLC and The Sportsman's Guide, Appellees.

Duane Reott and Patty Reott,

v.

Asia Trend, Inc., Clam Corporation (As Successor–in–Interest to USL Outdoor Products, Inc.), USL Outdoor Products, Inc., Remington Arms Company, Inc., RA Brands, LLC and The Sportsman's Guide.

Appeal of The Sportman's Guide.

Duane Reott and Patty Reott,
Husband and Wife,

v.

Asia Trend, Inc., Clam Corporation (As Successor–in–Interest to USL Outdoor Products, Inc.), Remington Arms Company, Inc., RA Brands, LLC and The Sportsman's Guide.

Appeal of Remington Arms Company, Inc. and RA Brands, LLC.

Duane Reott and Patty Reott,
Husband and Wife,

v.

Asia Trend, Inc., Clam Corporation (As Successor–in–Interest to USL Outdoor Products, Inc.), USL Outdoor Products, Inc., Remington Arms Company, Inc., RA Brands, LLC and The Sportsman's Guide.

Appeal of Asia Trend, Inc.

Superior Court of Pennsylvania.

Argued July 27, 2010.

Filed Sept. 21, 2010.
Reargument Denied Nov. 23, 2010.

832

David A. Neely, Pittsburgh, for Reott.

Philip J. Mohr, Winston–Salem, N.C., for Remington Arms and RA Brands.

Kate J. Fagan, Pittsburgh, for Sportsman Guide.

BEFORE: STEVENS, DONOHUE and OTT, JJ.

OPINION BY DONOHUE, J.:

Duane Reott ("Mr. Reott") and Patty Reott ("Mrs. Reott") (collectively, "the Reotts") appeal from the order entered on December 14, 2009, denying their motion for post-trial relief filed following a jury verdict in favor of the defendants, Asia Trend, Inc., Remington Arms Company and RA Brands, and The Sportsman's Guide (collectively, "Appellees"). After careful review, we reverse and remand for a new trial limited to damages.

The parties do not dispute the basic facts in this case. In January of 2003, Mr. Reott's brother, Douglas Reott ("Douglas"), ordered two identical Remington-branded tree stands from The Sportsman's Guide at Mr. Reott's request and gave them to Mr. Reott, who paid for them. Prior to September 25, 2005, Mr. Reott had used one of the tree stands numerous times, but had never taken the second one out of the box. On September 25, 2005, Mr. Reott went to the farm of his brother, Daniel Reott ("Daniel"), in Butler County, intending to install the second tree stand on a tree there. He assembled the tree stand in Daniel's house, then he and Daniel took it out into the woods. After they selected a suitable tree, Mr. Reott used a ladder stick to climb up about 20 to 25 feet and install the tree stand. He then cinched the locking strap to the tree trunk to secure the tree stand.

Mr. Reott then climbed onto the tree stand platform, and while bear hugging the tree he raised himself up on his toes and came down gently on his heels to take any remaining slack out of the locking strap, a maneuver he testified he had done hundreds of times and referred to as "setting the stand." On this occasion, however, the locking strap broke free and Mr. Reott fell to the ground, crushing one of

his vertebrae.[1] Daniel transported Mr. Reott back to his house. Upon subsequent examination of the broken tree stand, they discovered that the two segments of the tree stand's locking strap had been held together only by a dab of glue, rather than being stitched together like a seatbelt.

The Reotts brought suit against Appellees sounding in products liability, alleging that Mr. Reott's injuries were caused by a manufacturing defect in the tree stand. At trial, the Reotts produced an expert witness, David Bizzak, Ph.D. ("Dr. Bizzak"), who testified that the tree stand was rated for 300 pounds while Mr. Reott weighed only about 170 pounds. He further testified that Mr. Reott's motion of bobbing up and down on his heels to "set the stand" would have increased the amount of force on the tree stand by only about 10%, and that this force was "not a significant load as compared to the capacity of the stand." N.T., 8/25/09, at 33–34. Dr. Bizzak's expert testimony was uncontroverted.

After the Reotts rested, Appellees called no witnesses of their own, and only entered into evidence the tree stand's instruction manual and a video tape that came with it. The Reotts then moved for a directed verdict. In opposition, Appellees argued that the "setting" maneuver raised a question as to whether Mr. Reott's conduct was highly reckless. Appellees further argued that they did not have the burden of proving highly reckless conduct, and that as a result the issue of causation should go to the jury. The trial court granted the Reotts' motion for a directed verdict as to the defectiveness of the product, but declined to do so as to causation. On August 27, 2009, the jury returned a verdict in favor of Appellees.

The Reotts filed a motion for post-trial relief asking for judgment notwithstanding the verdict ("JNOV"), and Appellees filed a motion for cross-post-trial relief on evidentiary issues. The trial court denied all of these post-trial motions.

Both the Reotts and Appellees filed timely appeals. The Reotts present three questions for our consideration:

I. Did the trial court err as a matter of law when it granted a directed verdict in favor of [the Reotts] as to the defectiveness of the tree stand but refused to grant a directed verdict with respect to causation and, therefore, whether the trial court erred in not granting [the Reotts'] Motion for [JNOV] as raised in [the Reotts'] Motion for Post–Trial relief.

II. Did the trial court commit an error of law when it allowed Questions 1 and 2 on the verdict slip over the objection of counsel for [the Reotts] when these questions dealt with whether or not [Mr. Reott] failed to follow the instructions that came with the tree stand and, if so, whether said failure was a substantial cause of his injuries.

III. Did the trial court err when it allowed defense counsel to play a videotape which came with the tree stand when said videotape contained repeated instructions that one should always wear the safety harness that accompanied the tree stand. [Mr. Reott's] failure to wear the safety harness while installing the tree stand was, at most, negligence (even though [Mr. Reott] denies that he was negligent in not wearing the safety harness at the time the tree stand failed). However, negligence concepts are not permitted in an action based on

---

1. Although the instruction manual called for Mr. Reott to wear a fall restraint device "when climbing, descending, sitting on or standing on" the tree stand, he was not wearing it at the time of his fall.

strict product liability, and the trial court had even granted [the Reotts'] Motion in Limine barring [Appellees] from introducing evidence of [Mr. Reott's] failure to wear the safety harness.

Appellants' Brief at 3.

In their cross-appeals, Appellees raise a single issue for our review:

Whether the trial court erred in excluding proffered evidence that [Mr. Reott] failed to use the included safety harness at the time of the accident and failed to practice with the tree stand at ground level prior to installing it?

Appellees' Briefs at 4.

■■■ We begin with the first issue raised by the Reotts, namely whether the trial court erred by refusing to grant them a directed verdict on causation when they rested their case or, in the alternative, in refusing to grant them JNOV after the verdict was entered. *Id.* Our standard of review for these two questions is well settled:

In reviewing a trial court's decision whether or not to grant judgment in favor of one of the parties, we must consider the evidence, together with all favorable inferences drawn therefrom, in a light most favorable to the verdict winner. Our standard[s] of review when considering motions for a directed verdict and judgment notwithstanding the verdict are identical. We will reverse a trial court's grant or denial of a judgment notwithstanding the verdict only when we find an abuse of discretion or an error of law that controlled the outcome of the case. Further, the standard of review for an appellate court is the same as that for a trial court.

There are two bases upon which a judgment N.O.V. can be entered; one, the movant is entitled to judgment as a matter of law and/or two, the evidence is

such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. With the first, the court reviews the record and concludes that, even with all factual inferences decided adverse to the movant, the law nonetheless requires a verdict in his favor. Whereas with the second, the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure.

*Campisi v. Acme Markets, Inc.,* 915 A.2d 117, 119 (Pa.Super.2006) (quoting *Capital Care Corp. v. Hunt,* 847 A.2d 75, 81–82 (Pa.Super.2004)).

■■■ The trial court denied the Reotts' motions for directed verdict and JNOV on causation based on its determination that in a products liability action the burden of proof lies with the plaintiff when a defendant introduces evidence of the plaintiff's alleged highly reckless conduct. This presents a question of law, for which our standard of review is *de novo* and our scope of review is plenary. *See, e.g., Walnut Street Associates, Inc. v. Brokerage Concepts, Inc.,* 982 A.2d 94, 97 (Pa.Super.2009), *appeal granted in part on other grounds,* 990 A.2d 724 (Pa.2010).

■■■ Before examining the trial court's ruling, it will be helpful first to review the relevant law on products liability: to state a products liability cause of action under section 402A of the Restatement (Second) of Torts in Pennsylvania, a plaintiff must prove two things: "(1) that the product was defective; and (2) that the defect was a substantial factor in causing the injury." *Hadar v. AVCO Corp.,* 886 A.2d 225, 228 (Pa.Super.2005) (citing *Webb v. Zern,* 422 Pa. 424, 220 A.2d 853 (1966)). A product is defective "when it is not safe for its intended use, *i.e.,* the product left the supplier's control lacking any element

necessary to make it safe for its intended use." *Azzarello v. Black Bros. Co., Inc.,* 480 Pa. 547, 559, 391 A.2d 1020, 1027 (1978); *French v. Commonwealth Associates, Inc.,* 980 A.2d 623, 632 (Pa.Super.2009).

The key inquiry in all products liability cases is whether or not there is a defect—it is the product, and not the defendant's conduct, that is on trial. *See, e.g., Hutchinson v. Penske Truck Leasing Co.,* 876 A.2d 978, 983 (Pa.Super.2005), *affirmed,* 592 Pa. 38, 922 A.2d 890 (2007). Thus evidence of a plaintiff's contributory negligence is generally inadmissible. In certain limited circumstances, evidence of a plaintiff's conduct may be admissible, specifically where the defendant alleges that the plaintiff's voluntary assumption of risk, product misuse, or highly reckless conduct is relevant to the issue of causation. *Gaudio v. Ford Motor Co.,* 976 A.2d 524, 540 (Pa.Super.2009), *appeal denied,* 989 A.2d 917 (Pa.2010). To establish voluntary assumption of the risk, the defendant must show that the buyer knew of a defect and yet voluntarily and unreasonably proceeded to use the product in conscious disregard for the attendant risks. *Ferraro v. Ford Motor Co.,* 423 Pa. 324, 327, 223 A.2d 746, 748 (1966); *Jara v. Rexworks Inc.,* 718 A.2d 788, 794–95 (Pa.Super.1998); *see also Charlton v. Toyota Indus. Equip.,* 714 A.2d 1043, 1047 (Pa.Super.1998) ("Evidence of contributory negligence, standing alone, is insufficient to prove a voluntary assumption of the risk . . ."). To establish misuse of the product, the defendant must show that the use was so "unforeseeable or outrageous" that it constituted a sole or superseding cause. *Gaudio,* 976 A.2d at 540.

Conduct is highly reckless when the plaintiff knew or had reason to know of facts which created a high degree of risk of physical harm to himself and that he deliberately acted, or failed to act, in conscious disregard of that risk. *Charlton,* 714 A.2d at 1047. Highly reckless conduct is admissible only when it is offered to show that it constituted a sole or superseding cause of the plaintiff's injury. *See, e.g., Madonna v. Harley Davidson, Inc.,* 708 A.2d 507, 509 (Pa.Super.1998) (evidence of plaintiff's intoxication was admissible regarding causation); *Bascelli v. Randy, Inc.,* 339 Pa.Super. 254, 488 A.2d 1110, 1113 (1985) (evidence that plaintiff was operating motorcycle at more than 100 mph was admissible as to the cause of the accident); *Dillinger v. Caterpillar, Inc.,* 959 F.2d 430, 441 (3d Cir.1992) ("The issue of causation is raised when the plaintiff's action is so reckless that the plaintiff would have been inured despite the curing of any alleged defect, or is so extraordinary and unforeseeable as to constitute a superseding cause.".). Ordinary negligence by the plaintiff is admissible only where the evidence is offered to prove that the negligence was the sole cause of the injury. *Madonna,* 708 A.2d at 509.

With this background, we turn to the trial court's interpretation of the law. The trial court concluded that because this Court has held that highly reckless conduct is admissible insofar as it "relates to the element of causation," *id.,* it follows that evidence of highly reckless conduct is not an affirmative defense, but rather is evidence that refutes the element of causation. Trial Court Opinion, 12/14/09, at 4. Under the trial court's interpretation of the law, a defendant does not have the burden of proof on the issue, and instead only needs to introduce some evidence suggestive of highly reckless conduct to "rais[e] a question for the jury on the issue of causation." *Id.*

After careful review of existing Pennsylvania case law, we conclude that the trial court's interpretation is errone-

ous. As indicated hereinabove, in three limited circumstances a defendant may introduce evidence of a plaintiff's conduct in an attempt to prove that said conduct constituted a voluntary assumption of risk, a misuse of the product, and/or highly reckless behavior. As prior cases reflect, these three defenses are all *affirmative defenses* for which the defendant asserting them bears the burden of proof. Our Supreme Court has recognized that the defendant has the burden of proving assumption of the risk for nearly a hundred years. *Falyk v. Pennsylvania R. Co.*, 256 Pa. 397, 402, 100 A. 961, 963 (1917) ("The burden of proof as to the assumption of risk is on the defendant ..."); *Jara v. Rexworks Inc.*, 718 A.2d 788, 794–95 (Pa.Super.1998). ("[It is] required that the defendant raising this defense prove that the risk was voluntarily undertaken in addition to being known.").

Likewise, in *Childers v. Power Line Equipment Rentals, Inc.*, 452 Pa.Super. 94, 681 A.2d 201 (1996), *appeal denied*, 547 Pa. 735, 690 A.2d 236 (1997), this Court recognized that both product misuse and highly reckless behavior are affirmative defenses. In *Childers*, a digger-derrick truck operator was killed when the truck jerked forward and then rolled back and crushed him between the truck and the flatbed trailer. This Court affirmed the trial court's refusal to permit the introduction of evidence of the decedent's contributory negligence. With respect to product misuse, we held that "to demonstrate that decedent misused the truck, it was necessary *for appellants to show* that the use employed by decedent was either unforeseeable or outrageous." *Id.* at 208 (emphasis added) (citing *Brandimarti v. Caterpillar Tractor Company*, 364 Pa.Super. 26, 527 A.2d 134 (1987), *appeal denied*, 517 Pa. 629, 539 A.2d 810 (1988)). And for highly reckless conduct, we concluded that "to demonstrate that decedent's actions

were highly reckless, it was necessary *for appellants to show* that decedent knew or had reason to know of facts which created a high degree of risk of physical harm to himself or that he deliberately proceeded to act, or failed to act, in conscious disregard of that risk." *Id.* (emphasis added); *see also Gaudio*, 976 A.2d at 541 ("Highly reckless conduct ... requires the defendant to prove that the use was 'so extraordinary and unforeseeable as to constitute a superseding cause.' "); *Charlton*, 714 A.2d at 1047 ("To demonstrate that a plaintiff's actions are highly reckless, it must be shown that he knew or had reason to know....").

That all three are affirmative defenses is hardly surprising, since all three are closely akin to each other in various respects. For example, both assumption of the risk and highly reckless conduct require proof that the plaintiff acted in conscious disregard of a known risk. Similarly, product misuse and highly reckless conduct both involve conduct by the plaintiff that was so unforeseeable or outrageous that it constituted a sole or superseding cause of the plaintiff's injuries. *Gaudio*, 976 A.2d at 541; *Madonna*, 708 A.2d at 509. While there may be conduct that neatly falls into one category or the other, in many cases the conduct at issue could overlap into two or even all three categories. Given the overlap between the three defenses, it would be a bizarre result if the burden of proof shifted depending on how the defense is articulated. Such an approach would also permit a defendant to "burden shop" simply by placing a different name on the defense.

As a result, it is clear that in this Commonwealth highly reckless conduct is an affirmative defense that must be proven by the defendant by a preponderance of the evidence. Specifically, the defendant

must prove that (1) the plaintiff "knew or had reason to know of facts which created a high degree of risk of physical harm to himself or that he deliberately proceeded to act, or failed to act, in conscious disregard of that risk," *Charlton,* 714 A.2d at 1047, and (2) the plaintiff's conduct was the sole or superseding cause of the injury. *Madonna,* 708 A.2d at 509; *Gaudio,* 976 A.2d at 541.

■ Applying this two-part test to the evidence of record in this case, we must determine whether, considering all of the evidence in the light most favorable to Appellees as the verdict winners, reasonable minds could disagree over whether Mr. Reott's conduct was highly reckless. *See, e.g., Lockwood v. City of Pittsburgh,* 561 Pa. 515, 519, 751 A.2d 1136, 1138 (2000). With respect to the first prong of the test, we first ask whether reasonable minds could disagree over whether Mr. Reott knew or should have known that bobbing up and down on his toes on a defect-free tree stand entails a high degree of risk of injury or death. *Lockwood,* 561 Pa. at 519, 751 A.2d at 1138; *Charlton,* 714 A.2d at 1047. In this regard, Appellees claim that Mr. Reott's act of bear hugging the tree during his "setting the stand" maneuver was intended to "prevent himself from falling to the ground" in the event that the tree stand collapsed as a result of the maneuver, and thus reflects his subjective appreciation of the risks and dangers of falling while "setting the stand". Appellees' Brief at 9–10. Appellees also argue that the product instructions warned that failure to follow them could lead to serious injury or death, and since the "setting the stand" maneuver was not included in the instructions, Mr. Reott should have known it was dangerous. *Id.*

Mr. Reott did not testify that he bear hugged the tree while "setting the stand" in order to avoid falling. He also did not testify that he read the product instructions prior to installing the tree stand at issue in this case. Nevertheless, viewing Mr. Reott's testimony in the light most favorable to Appellees, the explanation proposed by Appellees for Mr. Reott's actions on the day in question (especially his decision to bear hug the tree), constitutes a fair inference from the evidence of record. As such, it was within a jury's province to adopt the explanation proposed by Appellees and, accordingly, to find that Mr. Reott had an subjective appreciation of the risk of falling while installing the tree stand. Accordingly, we cannot say that this is a question on which reasonable minds cannot disagree.

■ With respect to the second prong of the test, we ask whether reasonable minds could disagree over whether Mr. Reott's "setting the stand" maneuver was the sole or superseding cause of his injuries. *Lockwood,* 561 Pa. at 519, 751 A.2d at 1138; *Gaudio,* 976 A.2d at 541. The only evidence offered at trial by Appellees (the instruction manual and accompanying video tape) is remote from establishing this second factor. To show that the "setting the stand" maneuver was the sole cause of his injuries, Appellees would have had to show at trial that Mr. Reott exerted so much force on the tree stand that it would have collapsed even if it had been correctly manufactured.

Dr. Bizzak's uncontroverted testimony was that the "setting" maneuver increased the force on the stand by about 10% above Mr. Reott's normal weight, and that this was not a significant load compared to the design capacity of the stand. Although the jury was within its province to reject Dr. Bizzak's testimony, Appellees, who bore the burden of proof on the issue, introduced *no* evidence regarding how much force Mr. Reott exerted on the tree

stand or whether it would have collapsed even if manufactured correctly. Simply put, there is simply no evidence of record to support a jury finding that Mr. Reott's "setting the stand" maneuver could have exerted sufficient force to cause it to collapse in the absence of defect. *See, e.g., Fitzpatrick v. Natter*, 599 Pa. 465, 485–86, 961 A.2d 1229, 1241–42 (2008) ("Thus, while the jury may draw reasonable inferences, it 'may not be permitted to reach its verdict merely on the basis of speculation or conjecture, but ... there must be evidence upon which logically its conclusion may be based.' ") (quoting *Jones v. Treegoob*, 433 Pa. 225, 230, 249 A.2d 352, 354 (1969)).

▪ To show that the "setting the stand" maneuver was a superseding cause, Appellees would have had to show that it was "so extraordinary as not to have been reasonably foreseeable." *Hall v. Jackson*, 788 A.2d 390, 399 (Pa.Super.2001). Again, however, there is no evidence of record to indicate that Mr. Reott's "setting the stand" maneuver was at all extraordinary or unforeseeable. Indeed, the only evidence on this issue introduced at trial by either party was Mr. Reott's own uncontradicted testimony that he had performed the "setting the stand" maneuver hundreds of times in the past, with no adverse consequences.

Thus, the evidence introduced at trial was insufficient as a matter of law to support Appellees' defense of highly reckless conduct. Consequently, the trial court erred in denying the Reotts' motions for a directed verdict and JNOV on the issue of causation, and we must reverse and remand the case for a new trial. Because

the trial court granted a directed verdict on the defectiveness of the product, which ruling has not been appealed, the new trial will be limited to the determination of damages.[2]

In their cross-appeals, Appellees request that if this Court determines that the Reotts' are entitled to a new trial, then on remand we also reverse the trial court's order precluding Appellees from introducing evidence of Mr. Reott's failures to wear the fall restraint device (a safety strap) included with the tree stand, and to practice/test setting the tree stand at ground level before climbing 25 feet to install it.

▪ We note that our standard of review for evidentiary rulings is a narrow one:

When we review a trial court's ruling on admission of evidence, we must acknowledge that decisions on admissibility are within the sound discretion of the trial court and will not be overturned absent an abuse of discretion or misapplication of law. In addition, for a ruling on evidence to constitute reversible error, it must have been harmful or prejudicial to the complaining party.

*Stumpf v. Nye*, 950 A.2d 1032, 1036 (Pa.Super.2008). A party suffers prejudice when the trial court's error could have affected the verdict. *Trombetta v. Raymond James Financial Services, Inc.*, 907 A.2d 550, 561 (Pa.Super.2006).

▪ Prior to trial, the Reotts filed a motion *in limine* to exclude any evidence of Mr. Reott's failure to use the supplied safety strap,[3] to practice with the tree

---

**2.** As a result of our resolution of the Reotts' first question, we need not address their second and third issues.

**3.** The product instruction manual explained the need to wear the fall restraint device

"when climbing, descending, sitting on or standing on" the tree stand.

stand at ground level, or to inspect the tree stand before using it. The trial court granted this motion *in limine,* ruling that such evidence was inadmissible because Appellees did not intend to introduce it to dispute the cause of the tree stand's failure. Trial Court Opinion, 8/21/09, at 3. We agree.

On appeal, Appellees argue that the trial court erred by incorrectly focusing on the cause of the tree.stand's failure as opposed to the cause of Mr. Reott's injury. Appellees' Brief at 11–12. While Appellees do not dispute that Mr. Reott's failure to practice with the tree stand and use the safety strap were not the causes of the failure of the tree stand, they contend that he would have been injured less, if at all, had he done so. In drawing this distinction, however, Appellees ignore a critical point: in order for an action in products liability to lie it is required only that the product defect be a *substantial factor* in the injury, not that it be the sole cause. *Charlton,* 714 A.2d at 1046. Even if Mr. Reott's own actions constituted a substantial factor in his injury, there is no question that the collapse of the tree stand was *also* a substantial factor. Because the excluded evidence was not being offered to show that it was the sole or superseding cause of the injury, said evidence would only have created a question of comparative fault between the parties. Our Supreme Court has made it clear that negligence concepts generally, and particularly comparative fault, have no place in products liability actions. *E.g., Kimco Dev. Corp. v. Michael D's Carpet Outlets,* 536 Pa. 1, 6, 637 A.2d 603, 605 (1993).

Appellees next argue that our Supreme Court's holding in *Pennsylvania Department of General Services v. U.S. Mineral Products Co.,* 587 Pa. 236, 898 A.2d 590 (2006) (*"General Services I"*) requires the admission of any evidence that the plaintiff used the product in a way not intended by the manufacturer. Appellees' Brief at 12. In *General Services I,* the Commonwealth brought a products liability suit against building materials suppliers and manufacturers because of chemical contamination that resulted after a state-owned building caught fire. Holding that "a manufacturer can be deemed liable only for harm that occurs in connection with a product's intended use by an intended user," our Supreme Court ruled that the defendants were not liable because their product was not intended to be incinerated. Based on this holding, Appellees contend that the evidence of Mr. Reott's conduct should not have been excluded because it was offered to show that Mr. Reott was not using the tree stand in the intended way (as described in the product instructions).

In relying on the Supreme Court's decision in *General Services I,* Appellees conflate two distinct concepts in products liability law: the doctrine of unintended use with the affirmative defense of product misuse. *Smith v. Yamaha Motor Corp., U.S.A.,* 2010 PA Super 154 at *15, 5 A.3d. 314, 321 (2010). The affirmative defense of product misuse relates to the causation of plaintiff's injuries. As explained hereinabove, to establish this defense a defendant must prove that the plaintiff's misuse of the product was so outrageous and unforeseeable as to constitute the sole or superseding cause of the plaintiff's injury. *Madonna,* 708 A.2d at 509. For example, in *Madonna* this Court held that evidence of product misuse could be used as a defense by a motorcycle manufacturer where evidence was introduced to show that the crash occurred not as a result of a defect in a bolt in the motorcycle's brakes, but rather solely as a result of the plaintiff's intoxication while driving. *Id.*

In *General Services I,* on the other hand, our Supreme Court did not deter-

mine that the building materials were not a substantial factor in the contamination. Instead, the Supreme Court held that because the building materials were not being used in a way intended by the manufacturer, the building materials were not legally defective. *General Services I,* 587 Pa. at 252–54, 898 A.2d at 600–01. In other words, because the building materials were not designed to be burned, they were not defective as a matter of law to the extent that chemicals were released during a fire (even if the fire was foreseeable). *Id.* Similarly, in *Phillips v. Cricket Lighters,* 576 Pa. 644, 841 A.2d 1000 (2003) (plurality decision), our Supreme Court held that a butane lighter was not defective for lack of child safety features because it was not intended to be used by children as a toy or plaything. *Id.* at 650, 841 A.2d at 1003; *see also Smith,* 2010 PA Super 154 at *15, 5 A.3d 314, 321 (reversing grant of summary judgment on the grounds that "ATVs are designed to be driven in an off-road setting, and Mr. Smith was utilizing the ATV in that capacity when the accident occurred").

As a result, *General Services I* provides no support for Appellees' arguments in this case. Appellees do not dispute the defectiveness of the tree stand. Instead, Appellees contend only that the trial court's grant of the Reott's motion *in limine* precluded them from introducing evidence to suggest that Mr. Reott's conduct, including his failure to wear a safety strap and to test the tree stand at ground level, contributed to the extent of his injuries. Because the collapse of the tree stand collapse was indisputably a substantial factor in causing Mr. Reott's injuries, the trial court correctly reasoned that any evidence of Mr. Reott's conduct was admissible only to the extent that it was introduced to show that his conduct was a sole or superseding cause of the collapse (*i.e.,* to establish the affirmative defense of

product misuse). Because Appellees never contended that Mr. Reott's failure to wear the safety strap or to test the tree stand at ground level were the sole or superseding causes of his injuries, the trial court properly granted the Reotts' motion *in limine.*

Order dated December 14, 2009 reversed. Case remanded for a new trial limited to damages. Panel jurisdiction relinquished.