J-A14032-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| JRW SERVICES GROUP, LLC, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| GEORGE REX CAMP, III AND INVESTORS MANAGEMENT SERVICES, LLC, | |
| Appellants | No. 2987 EDA 2016 |

Appeal from the Judgment Entered August 31, 2016
In the Court of Common Pleas of Chester County
Civil Division at No(s): 15-02657

BEFORE:  BENDER, P.J.E., BOWES and SHOGAN, JJ.

MEMORANDUM BY SHOGAN, J.:               **FILED SEPTEMBER 06, 2017**

Appellants George Rex Camp, III ("Camp") and Investors Management Services, LLC ("IMS") appeal the entry of judgment in favor of JRW Services Group, LLC ("JRW"), following the denial of their alternative motions for judgment notwithstanding the verdict ("JNOV") and a new trial.[1]  We affirm.

This action stems from the renovation of an office building in Malvern, Pennsylvania, that took place from October of 2013 through May of 2014. IMS was the general contractor of the project.  Camp was the principal of

---

[1]  Appellants purport to appeal from the order denying their post-trial motions.  However, an appeal properly lies from the entry of judgment. ***Johnston the Florist, Inc. v. TEDCO Const. Corp.***, 657 A.2d 511, 514 (Pa.Super.1995).  Here, judgment was entered in favor of JRW on August 31, 2016.  We have amended the caption accordingly.

IMS. On November 24, 2013, Appellants entered into a subcontractor agreement ("Agreement") with JRW to provide heating/ventilation/air-conditioning ("HVAC") and plumbing services for the project at a total cost of $403,245 ($350,925 for the HVAC system and $52,320 for the plumbing). The Agreement also provided that "no deviations from the work specified in the contract will be permitted or paid for unless a written extra work or change order is first agreed upon and signed." Agreement, 11/24/13, at ¶ 4. Despite the written change order provision, some oral modifications to the work were made and memorialized in emails.

After the project was completed and certain invoices remained outstanding, Appellants advised JRW that the owners of the property would be paying JRW directly for those invoices. Appellants failed and/or refused to pay JRW a total of $63,778.90 in unpaid invoices for the project.

JRW initiated this matter by filing a complaint dated March 30, 2015, which raised two counts: one for breach of contract and one for violation of the Pennsylvania Contractor and Subcontractor Payment Act ("CASPA"), 73 P.S. §§ 501—516.[2] On June 25, 2015, Appellants filed an amended answer,

---

[2] CASPA is:

> a comprehensive statute enacted in 1994 to cure abuses within the building industry involving payments due from owners to contractors, contractors to subcontractors, and subcontractors to other subcontractors. The underlying purpose of CASPA is to protect contractors and subcontractors and to encourage fair

*(Footnote Continued Next Page)*

new matter, and counterclaim against JRW. In their answer, Appellants did not specifically deny any of JRW's factual allegations. In their counterclaim, Appellants presented five counts: breach of contract-overpayment, unjust enrichment-overpayment, breach of contract-nonperformance for system failure, unjust enrichment-nonperformance for system failure, and promissory estoppel. On July 15, 2016, JRW replied to Appellants' new matter and answered Appellants' counterclaim.

After discovery was closed, Appellants filed a motion for summary judgment on March 21, 2016, and JRW filed a response. The trial court declined to rule on the motion. Appellants then filed a motion *in limine* to prevent JRW from introducing evidence of Appellants' payment practices with regard to other project subcontractors, which motion the trial court granted. Order, 5/16/16.

A jury trial began on May 16, 2016, and on May 18, 2016, the jury returned a verdict in favor of JRW on JRW's breach-of-contract count against

*(Footnote Continued)* _____

dealing among parties to a construction contract. The statute provides rules and deadlines to ensure prompt payments, to discourage unreasonable withholding of payments, and to address the matter of progress payments and retainages. Under circumstances prescribed in the statute, interest, penalty, attorney fees and litigation expenses may be imposed on an owner, contractor or subcontractor who fails to make payment to a contractor or subcontractor in compliance with the statute.

***Zimmerman v. Harrisburg Fudd I, L.P.***, 984 A.2d 497, 500–501 (Pa. Super. 2009) (brackets, citation, quotation marks, and footnote omitted).

IMS in the amount of $55,812. Additionally, the jury found that Camp assumed individual liability under the Agreement and breached the Agreement, but it did not assess damages against him. With regard to JRW's CASPA count, the jury found that IMS violated the CASPA. The jury also determined that IMS was obligated to pay JRW as of June 19, 2014. Lastly, the jury found in favor of JRW on Appellants' counterclaims.

On May 23, 2016, JRW filed a petition for attorneys' fees, interest, and penalties under the CASPA, which the trial court granted on July 11, 2016. On May 31, 2016, Appellants filed post-trial motions seeking JNOV, or alternatively, a new trial. The trial court heard oral argument on August 5, 2016, and denied the motions on August 16, 2016. Judgment was entered in favor of JRW on August 31, 2016. This timely appeal followed. Appellants and the trial court complied with Pa.R.A.P. 1925.

Appellants present the following issues for our consideration:

1. Whether judgment n.o.v. should be entered in favor of Defendants-Appellants because [JRW's] claims at trial should have been limited to breach of written contract, as pleaded, and the record makes clear no written change orders were executed as required by the contract?

2. In the alternative, whether Defendants-Appellants are entitled to a new trial because Defendants were unduly prejudiced by [JRW's] ability to proceed at trial on last-minute oral modification and oral contract claims—which were never pled or noticed and were effectively added mid-trial without motion by [JRW]?

3. In the alternative, whether judgment n.o.v should be entered in favor of Defendants-Appellants, in part, because the

record is devoid of any evidence to support a verdict beyond $8,599 in extra fees?

4. Whether Defendant-Appellant George Rex Camp, III, individually, is entitled to judgment n.o.v. because he is not a party to the written contract and no evidence was presented at trial that he personally guaranteed any obligations?

Appellant's Brief at 3–4.

Appellants first argue they are entitled to JNOV. Appellants' Brief at 16. Our standard of review regarding JNOV is as follows:

> In reviewing a trial court's decision whether or not to grant judgment in favor of one of the parties, we must consider the evidence, together with all favorable inferences drawn therefrom, in a light most favorable to the verdict winner. Our standard[s] of review when considering motions for a directed verdict and judgment notwithstanding the verdict are identical. We will reverse a trial court's grant or denial of a judgment notwithstanding the verdict only when we find an abuse of discretion or an error of law that controlled the outcome of the case. Further, the standard of review for an appellate court is the same as that for a trial court.

> There are two bases upon which a judgment N.O.V. can be entered; one, the movant is entitled to judgment as a matter of law and/or two, the evidence is such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. With the first, the court reviews the record and concludes that, even with all factual inferences decided adverse to the movant, the law nonetheless requires a verdict in his favor. Whereas with the second, the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure.

*Reott v. Asia Trend, Inc.*, 7 A.3d 830, 835 (Pa. Super. 2010) (citation omitted).

Specifically, Appellants contend they are entitled to JNOV because "[JRW] did not properly plead the existence of any separate oral contract

and/or oral modification." Appellants' Brief at 16. According to Appellants, "passing statements in pleadings that [Appellants] 'authorized' all work cannot be legally sufficient to raise <u>oral</u> modification and/or separate <u>oral</u> contract claims, and cannot fairly place [Appellants] on notice of such claims." *Id.* at 17 (emphasis in original). Thus, Appellants take issue with the trial court's finding that "the term 'authorized' in the pleadings, in and of itself, 'includes and embraces oral.'" *Id.* (citation omitted). Appellants conclude that "[JRW] waived any oral contracting claims, and it was an error of law to allow [JRW] to proceed at trial on oral contract and/or oral modification claims." *Id.* at 18.

In response, JRW has reproduced factual averments from its complaint to demonstrate it "specifically pled that [Appellants] requested and authorized work in addition to the work required under the written Subcontractor Agreement." JRW's Brief at 14. According to JRW, its complaint "is clear that the breaches of contract alleged related both to the written Subcontractor Agreement, as well as to oral modifications requested by [Appellants] and billed separately by [JRW]." *Id.* at 15. Additionally, JRW contends that Appellants did not file preliminary objections to JRW's complaint and, therefore, have waived any objections to it; moreover, Appellants responded to the averments in JRW's complaint without specifically denying them and, therefore, admitted them by implication. *Id.* at 16–17. Lastly, JRW argues that it was not required to set forth an

affirmative defense because it pled sufficient facts in its answer to Appellants' counterclaim to constitute defenses. *Id.* at 20.

The trial court disposed of Appellants' first issue with citations to the pleadings, as follows:

> [Appellants'] post-trial motion also requests that judgment be entered in their favor on all counts. The arguments asserted by [Appellants] in their present motion are the same as those they raised during the trial when they moved unsuccessfully for compulsory nonsuit. [Appellants] have not provided the court with any new law or evidence that would require the court to rule differently now.
>
> * * *
>
> [Appellants] argue that [JRW's] claims should have been limited to breach of the written subcontractor agreement. According to [Appellants], [JRW's] claims of oral modification of the parties' contract or a separate agreement were "waived" as a consequence of not having been raised as part of the pleadings. (Def.'s Mot., at ¶28.) [Appellants] claim that this failure and the fact that the record does not contain sufficient evidence of any written change orders as required by the contract mandates that judgment be entered in their favor. The court views the pleadings differently.
>
> In the Complaint at Count I — Breach of Contract, [JRW] pled the following in support of its claim that [Appellants] had approved and accepted extra work it performed and for which it sought payment.
>
> - "All of the work was from time to time submitted for approval by [Appellants] and was accepted by [Appellants]." (Pl.'s Compl., at ¶8.)
> - "In addition to the work agreed to pursuant to the Subcontractor Agreement, [Appellants] did request that [JRW] perform certain extra work for HVAC extras and plumbing extras." (Pl.'s Compl., at ¶10.)
>
> - "[JRW] performed all of the work in a good and workmanlike manner all pursuant to the terms of the

Subcontract[or] Agreement and the terms of the extras requested and agreed to by the parties." (Pl.'s Compl., at ¶15.)

In response to the above, [Appellants] did not file preliminary objections alleging a lack of specificity or any other failure in [JRW's] pleading. Instead, they filed an Answer and responded as follows:

Denied. The averments of this paragraph are conclusions of law to which no response is required. To the extent a response may be deemed necessary, after reasonable investigation, [Appellants] are without sufficient knowledge or information to form a belief as to the truth of the allegations contained in this paragraph.

(Def.'s Answ., at ¶¶ 8,10,15.)

In their Answer to the Complaint, [Appellants] also asserted a number of counterclaims against [JRW]. [Appellants] claimed that [JRW] had breached the parties' subcontractor agreement by submitting overage charges in excess of "any change order requests that were supplied" and "charged for overage charges without written change orders." (Def.'s Countercl., at ¶¶ 21–22.) [Appellants] asserted that the parties' agreement "specifies that written change orders must be supplied before there can be any deviations from the work specified in the contract." (*Id.* at ¶15.)

[JRW] answered the counterclaim and pled:

15. Denied as stated. . . . In addition thereto, all work performed by [JRW] was approved by [Appellants], George Rex [C]amp, III or the Defendant, Investors Management Services, LLC.; In addition thereto, all other trades on job performed work in good faith from verbal agreements and were paid without written authorization; Also, the only two companies that obtained written approval were . . . ; also at least six other trade companies were paid with only verbal authorization such as [JRW] was instructed.

(Pl.'s Answ. Countercl., at ¶15.)

> The above undermines [Appellants'] contention that [JRW's] claims regarding non-written requests for extra work or changes were not raised as part of the pleadings.

Trial Court Opinion, 8/16/16, at n.1 heading **J.N.O.V.** (unnumbered 3–5).

Upon review, we find support in the record for the trial court's findings with regard to the content and significance of the pleadings, and its legal conclusions are without error. Moreover, we discern no abuse of discretion or error of law that controlled the outcome of the case. *Reott*, 7 A.3d at 835. The complaint contains sufficient averments of oral modifications and Appellants' acknowledgment thereof. *Accord Brinich v. Jencka*, 757 A.2d 388, 399 (Pa. Super. 2000) (affirming denial of JNOV where contractor presented "clear and convincing evidence that the parties orally contracted to modify the specifications of the construction plans"). *See also*, ***Universal Builders, Inc. v. Moon Motor Lodge, Inc.***, 244 A.2d 10, 16 (Pa. 1968) ("[I]t should be obvious that when [a contractor] requests a [subcontractor] to do extra work, promises to pay for it and watches it performed knowing that it is not authorized in writing, he cannot refuse to pay on the ground that there was no written change order. ***Focht v. Rosenbaum***, 176 Pa. 14, 34 A. 1001 (1876).").

Additionally, Appellants did not object to JRW's pleadings; rather, they filed an answer generally denying JRW's averments. *Accord* Pa.R.C.P. 1032 ("A party waives all defenses and objections which are not presented either by preliminary objection, answer or reply[.]"); Pa.R.C.P. 1029(b), (c), and

Note ("(b) Averments in a pleading to which a responsive pleading is required are admitted when not denied specifically or by necessary implication. A general denial or a demand for proof . . . shall have the effect of an admission. (c) A statement by a party that after reasonable investigation the party is without knowledge or information sufficient to form a belief as to the truth of an averment shall have the effect of a denial. *Note*: Reliance on subdivision (c) does not excuse a failure to admit or deny a factual allegation when it is clear that the pleader must know whether a particular allegation is true or false. **See Cercone v. Cercone**, 254 Pa.Super. 381, 386 A.2d 1 (1978)."). Thus, based on the record before us and the applicable law, we conclude the trial court properly denied Appellants' motion for JNOV.

Appellants argue in the alternative that they are entitled to a new trial. Appellants' Brief at 19. Our standard of review regarding a new trial is as follows:

> Our review of the trial court's denial of a new trial is limited to determining whether the trial court acted capriciously, abused its discretion, or committed an error of law that controlled the outcome of the case. In making this determination, we must consider whether, viewing the evidence in the light most favorable to the verdict winner, a new trial would produce a different verdict. Consequently, if there is any support in the record for the trial court's decision to deny a new trial, that decision must be affirmed.

**Joseph v. Scranton Times, L.P.**, 89 A.3d 251, 260 (Pa. Super. 2014) (citations omitted).

According to Appellants, they "prepared for and entered trial with the understanding that [JRW's] claims were based only on [Appellants'] breach of the written Agreement." Appellants' Brief at 20. Appellants complain that, had they "been placed on notice of [JRW's] expanded oral contract and oral modification claims," they "would have conducted additional discovery specific to those issues[,] . . . prepared and presented the defense at trial to specifically address these issues," subpoenaed additional deponents, "including all individuals who allegedly participated in the oral authorization of work," served numerous interrogatories "specific to [JRW's] communications and performed work[,]" prepared for trial in a "drastically different" manner, and shifted their "complete trial strategy which focused only on written change orders . . . to defend the oral contract and modification claims as well." *Id.* at 20–21.

> JRW counters:
>
> [Appellants'] argument is contradicted both by their own discovery requests, as well as by [JRW's] answers to discovery, and the motions made by [Appellants] leading to trial. . . . [DRW's] Reply to [Appellants'] Request for Production of Documents includes at least 55 email chains between [JRW], [Appellants], and the owners of the Property, many of which request and authorize [JRW] to perform work outside the scope of the written Subcontract[or] Agreement.

JRW's Brief at 20–21 (footnote omitted). Additionally, JRW highlights several factors that belie "[Appellants'] argument regarding fairness and notice," such as the involvement of Appellants' project manager, Jason

Charron, in the authorized change orders, Camp's deposition testimony, and

Appellants' motion *in limine*. ***Id.*** at 22–24, 26.

The trial court disposed of this challenge with citations to the record,

as follows:

> According to [Appellants], if the court refuses to dismiss [JRW's] claims, they should be granted a new trial due to the unfair surprise and prejudice caused by the addition of "new claims" at trial. The court disagrees.
>
> [Appellants] claim they did not have an opportunity to conduct discovery on the issues of verbal approval and changes. They assert that the discovery phase of this litigation focused entirely on written change orders. This is contradicted, however, by [JRW's] submissions during discovery.
>
> For example, in response to [Appellants'] requests for admissions, [JRW] provided the following response:
>
>> 6.     Denied as stated.   It is admitted that the entire Subcontractor Agreement . . . is a written document . . . in addition thereto, the contractor drawings had numerous errors and [Appellants] changed the scope of [JRW's] work . . .
>>
>> 16.   Denied.  All change orders were done at the request of [Appellants], approved and accepted by owners, and ***most*** of the change orders were confirmed in writing by [Appellants]. . . .
>>
>> 29.   Denied as stated.   The various emails and the subsequent agreements between the parties amend the Subcontractor Agreement.
>
> (Pl.'s Answ. To Req. for Adm., at ¶¶6,16,29.)
>
> Similarly, in response to [Appellants'] request for production of documents, [JRW] responded, by way of example, as follows:

> Plaintiff Exhibit 8 - . . . [JRW] met Defendant George Rex Camp III outside and showed him [JRW's] idea of relocating drain lines . . . Both Defendant George Rex Camp, III and owners accepted [JRW's] plan and advised [JRW] to proceed with the extra work.

> Plaintiff Exhibit 19 — Email chain with Defendant George Rex Camp, III and Jason Brennan in regards to meeting at buildings to go over requested changes in server room's systems. The parties met onsite and [JRW] was advised by Jason Brennan to change equipment to both rooms.

(Pl.'s Answ. Req. Prod., at ¶1.)

As the above reflects, there was no surprise to any party about [JRW's] theory of the case.

During oral argument on their motion, [Appellants] also suggested they were prejudiced because if they had known of [JRW's] theory of the case as presented at trial, they would have deposed Jason Charron, an individual involved with the project and extras and still unidentified "others." Mr. Charron's name, however, appears in any number of email communications produced to [Appellants] during discovery which also refer to meetings and conversations about changes, extras and approvals. (*See e.g. id.*, at Ex. 15.) Furthermore, [JRW] identified Mr. Charron as a potential witness in the case in its discovery responses. [Appellants'] failure to depose Mr. Charron was not caused by any surprise or lack of knowledge of the issues in the case.

Likewise, the record reflects that [Appellants] were not surprised "during trial" as argued. Before trial these issues were at the forefront of the parties' dispute. This issue of verbal changes and modifications was briefed and argued by the parties' [sic] in their submissions related to [Appellants'] request for summary judgment. [Appellants] also filed a motion in limine to preclude reference to payment of other subcontractors on change orders and extras that were not part of a written change order. Finally, despite their contention that the parties were bound by only the express written agreement, [Appellants] nonetheless submitted as a jury charge the standard instruction on the elements of a contract. If the only contract at issue was the parties' written contract (which no one denied the existence

of), the court can find no explanation for [Appellants'] request that it charge the jury on the elements of a contract.

The court simply cannot identify any surprise or prejudice suffered by [Appellants] that would require a new trial.

Trial Court Opinion, 8/16/16, at n.1, heading **J.N.O.V.** (unnumbered 5–6).

Viewing the evidence in the light most favorable to JRW, we conclude that a new trial would not produce a different verdict. We see no indication that the trial court acted capriciously, abused its discretion, or committed an error of law that controlled the outcome of the case. Moreover, there is support in the record for the trial court's decision to deny a new trial; therefore, we must affirm that decision. *Joseph*, 89 A.3d at 260.

In the third issue raised on appeal, Appellants claim they are entitled to JNOV because "[i]t was clear error of law to allow [JRW] to submit to the jury any claim in excess of $8,599." Appellants' Brief at 23. Appellants explain that JRW's principal, Jason Winters, offered testimony regarding only six extra items which cost an additional $8,599. *Id.* at 23. According to Appellants, "[w]ith the exception of these six items, Winters did not testify that [Appellants] requested any other work outside the scope of the Agreement, or that [Appellants] were even aware that any other work outside the Agreement was performed." *Id.* Therefore, Appellants conclude, "it was an error of law to submit [JRW's] claims totaling $95,467 to the jury for consideration with no evidentiary support." *Id.* at 24.

Contrarily, JRW asserts, "This argument is also without merit." JRW's Brief at 26. Specifically, JRW argues that Jason Winters "testified to having been ordered by [Appellants] to perform $86,681.00 in extra work." *Id.* at 27 (citing Exhibits P-1a, P-8, P-9, and P-10). JRW claims it "provided ample testimony and evidence to support the jury's verdict in this matter, and [Appellants'] argument is factually, mathematically, and legally without merit." *Id.* at 28.

The trial court succinctly disposed of this issue:

> As for the evidentiary basis for the jury's verdict, as [JRW] recites in its brief in opposition to [Appellants'] post trial motion at pages 6-10, there was ample evidence presented at trial from which the jury could properly conclude that [Appellants were] liable for breach of contract in the amount awarded [to JRW]. *See Universal Builders, Inc. v. Moon Motor Lodge, Inc.* 430 Pa. 550, 244 A.2d 10 (1968)(discussing that construction contracts typically provide that the builder will not be paid for extra work unless it is done pursuant to a written change order, yet courts frequently hold that owners must pay for extra work done at their oral direction; for example, the extra work may be said to have been done under an oral agreement separate from the written contract and not containing the requirement of a written authorization; the requirement of a written authorization may also be considered a condition which has been waived.)

Trial Court Opinion, 8/16/16, at n.1 heading **J.N.O.V.** (unnumbered at 6–7).

Upon review, we find support in the record for the trial court's findings with regard to the sufficiency of the evidence of damages, and its legal conclusions are without error. Again, we discern no abuse of discretion or error of law that controlled the outcome of the case. *Reott*, 7 A.3d at 835. JRW presented the testimony of its principal, Jason Winters, and

- 15 -

documentary evidence of invoices and supporting e-mails, all of which the jury chose to believe. N.T., 5/16/16, at 2–117; N.T., 5/17/16, at 2–63; Plaintiff's Exhibits 2–11, 16a, 17. Based on the evidence, the jury awarded JRW $55,812.00, which was $7,096.00 less that JRW requested for breach of the Agreement. Complaint, 3/30/15, at ¶ 13. Thus, we conclude the trial court properly denied the entry of JNOV in favor of Appellant IMS.

Lastly, Appellants argue that Camp was entitled to JNOV individually "because he is not a party to the written Agreement and no evidence was presented at trial that he personally guaranteed any obligations." Appellants' Brief at 24. JRW responds that Camp verified he was a party to this matter in multiple ways: he individually requested changes to the work in verbal communications and via email; he did not dispute those conversations or the conclusions drawn therefrom; he joined IMS as a counterclaim plaintiff; he verified the counterclaim in his individual capacity; he averred in the counterclaim that he performed and requested services under the Agreement; and he demanded judgment against counterclaim defendant, JRW. *Id.* at 29–30.

The trial court opined as follows:

According to [Appellants] as a matter of law, Camp cannot be held liable for "breach of a written contract or liable under the CSPA." [Appellants] contend that [JRW] failed to set forth any evidence that would tend to indicate that Camp was acting in a role other than as a "representative of IMS." [JRW] counters that there was ample evidence presented through the testimony of [JRW's] principal, Jason Winters, about the conversations and interactions he had with Camp and the approvals given to him

- 16 -

by Camp individually. At trial, Camp failed to dispute those conversations or the conclusions drawn from them or to testify that he acted as agent only. Taking the evidence in the light most favorable to the verdict winner, the court will not overturn the jury's findings regarding Camp's liability.

Trial Court Opinion, 8/16/16, at n.1 heading **Dimissal of George Rex Camp III** (unnumbered 7).

Considering the evidence, together with all favorable inferences drawn therefrom, in a light most favorable to JRW as the verdict winner, we conclude the trial court's findings are supported by the record, and we discern no an abuse of discretion or error of law that controlled the outcome of the case. *Reott*, 7 A.3d at 835. The record reveals that Camp made himself a party to this action, and the jury had sufficient evidence to find that he assumed individual liability under the Agreement and breached the Agreement, although it did not assess damages against him. N.T., 5/16/16, at 2–117; N.T., 5/17/16, at 2–63; Plaintiff's Exhibits 1–17, 19, 20; Verdict Sheet, 5/18/16, at Question No. 5. Therefore, we conclude the trial court properly denied the entry of JNOV in favor of Camp.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/6/2017