J-A21004-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| VERIZON PENNSYLVANIA LLC | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| CONCRETE CUTTING SYSTEMS, INC. | : | No. 3148 EDA 2022 |

Appeal from the Judgment Entered December 2, 2022
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 200701484

BEFORE: BENDER, P.J.E., DUBOW, J., and NICHOLS, J.

MEMORANDUM BY NICHOLS, J.: **FILED MARCH 28, 2024**

Appellant Verizon Pennsylvania LLC appeals from the order denying its post-sentence motion for a judgment notwithstanding the verdict (JNOV) after the trial court entered judgment in favor of Appellee Concrete Cutting Systems, Inc. Appellant argues that the trial court erred in failing to grant JNOV on the issue of the parties' compliance with certain statutory provisions concerning excavation and demolition. We affirm.

The trial court summarized the underlying facts of this matter as follows:

Appellant alleges that on or about January 7, 2019, Concrete Cutting Systems, Inc. (Appellee) severed its underground communications cables located in the intersection of 10th and Sansom Streets in Philadelphia. N.T. 8/29/22 at 15, 39. On or before January 7, 2019, Zayo Bandwidth, LLC (Zayo) engaged in a project to attach underground communications cable to a microwave tower. *Id.* at 39. Zayo retained the services of Henkels and McCoy (H&M) to make the appropriate excavations and install conduit through which the communications cable would be run. *Id.* at 39. H&M, in turn, hired Appellee, to perform

asphalt road surface and concrete sub-base cutting to facilitate the excavation of trenches necessary to the work to be performed by H&M. *Id.* at 39, 127; N.T. 8/30/22 at 163-164.

On January 7, 2019, Appellee arrived at the intersection of 10th St. and Sansom St., in Philadelphia, to perform its cutting services that evening for H&M. N.T. 8/29/22 at 133-135. On December 18, 2018, H&M made a PA One Call location request as the excavator working for Zayo through the PA One Call System pursuant to the Pennsylvania Underground Utility Line Protection Law, 73 P.S. §176 et seq. (UULL) on locate ticket 20183522558 for a mark out at 10th and Sansom Street. *Id.* at 53-54, 57. On December 20, 2018, Appellant responded to this ticket and "marked with paint." *Id.* at 55-56. On or about January 2, 2019, both H&M and Appellee made PA One Call location requests as excavators working for Zayo on locate tickets 20190023633 and 20190023698. *Id.* at 57-58. On January 3, 2019, Appellant responded to both location requests and the area was "marked with paint." *Id.* at 57-58.

H&M marked, in white paint, the lines along which it required Appellee to make cuts in the asphalt street surface and concrete sub-base. *Id.* at 159-160. H&M marked the cut lines with due regard for those marks attributed to those underground facility owners which marked the area set forth in the locate requests. *Id.* at 160-163, 202. Appellee made the required cuts that night and left the scene to attend to similar required cuts at the other locations laid out by H&M. *Id.* at 172; N.T. 8/30/22 at 166. Unknown to either H&M or Appellee, an underground facility owned by Appellant had been struck resulting in damage to communication lines. N.T. 8/29/22 at 163, 189-190, 201-202. The damage was [not] discovered until the following day. *Id.* at 188, 202.

Upon learning of the damage, Appellant notified Zayo of the incident and its damage claims. *Id.* at 38-39. Zayo in turn notified H&M. N.T. 8/30/22 at 167. Appellee learned about the incident on or about January 9, 2019. N.T. 8/29/22 at 179,201. As per the requirements of the PA One Call Act, H&M filed an Alleged Violation Report (AVR) with the Pennsylvania Public Utility Commission (PUC) and the matter was placed before the Damage Prevention Committee ("DPC") of the PUC for a determination of those claims. N.T. 8/30/22 at 196-199; N.T. 8/31/22 at 53, 60, 62. Appellee and Zayo also filed an AVR as required. N.T. 8/31/22 at 62. The matter was considered before the DPC on June 9,

2020. *Id.* at 65. Appellant chose not to file a required AVR despite being sent a request to file one on April 29, 2020, and did not otherwise participate in the hearing at all. *Id.* at 62; see P.S. §177(11). The DPC found that Appellant failed to mark the area of proposed excavation in response to Appellee's January 2, 2019 locate request. *Id.* at 63, 82, 87, 90. Appellant relied on prior markings of the facility Appellant made in response to an older locate request three or four weeks beforehand. N.T. 8/30/22 at 171, 173. The DPC also determined that Appellant's older markings, to the extent still visible, used an incorrect symbol to identify the facility which had been struck. N.T. 8/31/22 at 63, 90. The facility was ultimately determined to be a duct bank, a structure containing multiple conduits in a confined area, rather than the single conduit which the faded mark indicates was beneath the surface in that location. N.T. 8/29/22 at 189-190, 202, 222. The significance of this mismarking is that it materially changed the calculation of the tolerance zone around a marked facility. *Id.* at 120, 141, 152-153, 174-176.

Lastly, the damaged facility was only eight inches below the surface of the roadway above, in violation of City of Philadelphia specifications which require a minimum of twenty-four inches between the road surface and the top of the facility. *Id.* at 87-89, 189, 192, N.T. 8/30/22 at 164- 165, 192-193. Despite this discrepancy, Appellant made no other attempt to protect the facility such as concrete encasement or the placement of a steel cover over the facility. N.T. 8/29/22 at 189-190. Based on these findings, the DPC fined Appellant and exonerated Appellee of any violation of the PA One Call Act. N.T. 8/31/22 at 69-76. On July 22, 2020, Appellant instituted suit in this matter seeking money damages for property damage it allegedly sustained because of the negligence of Appellee in failing to comply with 73 P.S. §176, et seq., Excavation and Demolition. . . .

After a three-day bench trial which concluded on August 31, 2022, this court found in favor of Appellee. On September 12, 2022, this court entered its decision including findings of fact and conclusions of law. On September 22, 2022, following this court's decision, Appellant filed a motion for JNOV. On November 29, 2022, this court properly denied Appellant's motion for JNOV.

Trial Ct. Op., 2/3/23, at 1-4.

Appellant filed a timely notice of appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.[1]

On appeal, Appellant raises the following claims:

1. Did the trial court err as a matter of law and/or abuse its discretion in failing to grant judgment notwithstanding the verdict with respect to [Appellee's] failure to comply with its duties under 73 P.S. § 180.

2. Did the trial court err as a matter of law and/or abuse its discretion in failing to grant judgment notwithstanding the verdict with respect to [Appellant's] compliance with its duties under 73 P.S. § 177.

Appellant's Brief at 2.

Both of Appellant's claims challenge the trial court's denial of Appellant's motion for JNOV. *Id.* at 26-40. In support, Appellant argues that the trial court erred in concluding that Appellant failed to accurately mark and identify its underground facilities under Section 177. *Id.* at 26. Appellant further claims that the trial court erred in finding that Appellee exercised reasonable care when excavating the site in compliance with Section 180. *Id.* at 36. Therefore, Appellant concludes that the trial court erred in failing to grant Appellant's motion for JNOV. *Id.* at 40.

_____

[1] In its Rule 1925(a) opinion, the trial court concludes that Appellant waived his claims for review because it filed a "vague and overly broad" statement that spanned ten pages. *See* Trial Ct. Op. at 6-7. However, because Appellant's instant claims are apparent from the Rule 1925(b) statement, and the trial court addressed these claims in its Rule 1925(a) opinion, we conclude that the defects in Appellant's Rule 1925(b) statement do not impede appellate review. Therefore, we decline to find waiver on this basis.

In reviewing Appellant's claim, our standard of review is as follows:

In reviewing a trial court's decision whether or not to grant judgment in favor of one of the parties, we must consider the evidence, together with all favorable inferences drawn therefrom, in a light most favorable to the verdict winner. . . . We will reverse a trial court's grant or denial of a [JNOV] only when we find an abuse of discretion or an error of law that controlled the outcome of the case. Further, the standard of review for an appellate court is the same as that for a trial court.

There are two bases upon which a [JNOV] can be entered; one, the movant is entitled to judgment as a matter of law and/or two, the evidence is such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. With the first, the court reviews the record and concludes that, even with all factual inferences decided adverse to the movant, the law nonetheless requires a verdict in his favor. Whereas with the second, the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure.

*Reott v. Asia Trend, Inc.*, 7 A.3d 830, 835 (Pa. Super. 2010) (citation omitted).

Here, in its Rule 1925(a) opinion, the trial court explained:

Appellant argues that "the trial court erred as a matter of law and/or abused its discretion in failing to grant judgment notwithstanding the verdict with respect to the issue of Appellee's failure to comply with its duties under 73 P.S. §180, and Appellant's obligations under 73 P.S. §177." Appellant's 1925(b) Statement at 10.

The obligations of Appellant and Appellee are determined pursuant to [73 P.S. § 176-186 (the Act)]. The One Call Act was designed to protect contractors, facility owners, and the public at-large from the dangers of performing excavation activities without knowing what lies beneath the surface. Appellee is defined as an "excavator" performing "excavation work" and Appellant is a "facility owner." This court found that Appellee gave the required notice of intent to perform demolition work and that Appellant did not properly respond to the requests to mark its underground

lines. This court also found that Appellant did not properly paint lines on the ground to mark its underground facilities within 18 inches of its underground facilities and that Appellee adhered to the markings at 10th Street and Sansom Streets, Philadelphia, Pennsylvania which was identified as the work site. Finally, this court found as a matter of credibility that Appellant did not properly mark the lines in compliance with the Act and marked the lines more than 10 days prior to Appellee beginning excavation at the site. *See* 73 P.S. §177(4).

The purpose of the One Call Act is to protect the public health and safety by preventing excavation or demolition work from damaging underground service lines. ***Birt v. Firstenergy Corp.***, 891 A.2d 1281, 1287 n. 1 (Pa. Super. 2006). The Act accomplishes this purpose by imposing duties upon the facility owners, project owners, project designers and excavators.

The One Call Act mandates not only that facility owners must be members of the One Call System, but that they must provide both the designer and the excavator with accurate information regarding the location of their underground service lines. 73 P.S. §177. This duty arises first during the design stage when the facility owner must provide the architect or engineer with the position of its lines based on the best information available in the facility owner's possession. *Id.* at §4. The facility owner also has the duty to report to the field and physically mark its lines when construction at the site is imminent. *Id.* at §5(i). This duty extends so far as to require the facility owner to make reasonable efforts to locate even abandoned lines that remain in the records of the facility owner. *Id.* at §5(i).

In accordance with its overall purpose of preserving underground service lines and protecting the public, the One Call Act prescribes relatively limited duties for contractors and project owners. Essentially, these parties have a duty to place a telephone call to the One Call System before designing or excavating so that the facility owners can warn them of hidden underground lines. *See* 73 P.S. §179, §180. Ultimately, however, as the party with the best ability to know the exact locations of its lines, the facility owner has the duty under the statute to provide the designers and contractors with accurate information to protect the public. To that end, facility owners, including utility companies, are required to comply with the One Call Act and properly respond to One Call requests concerning the location of their underground lines to guard against explosions, severe leaks and other problems that

may arise when information as to the location of underground lines is improperly provided.

The Act clearly prescribes certain duties between facility owners and excavators. However, nothing in the One Call Act purports to limit the liability of a facility owner who fails to comply with the statute, or who is otherwise negligent. Importantly, and by contrast, the One Call Act does specifically limit excavators' liability: the "excavator who has complied with the terms of this act and who was not otherwise negligent shall not be subject to liability or incur any obligation to facility owners, operators, owners or other persons who sustain injury to person or property as a result of the excavator's excavation of demolition work damaging a facility owner's lines." 73 P.S. § 180(12)(i).

Since §177(5)(i) of the Act states that it is the duty of each facility owner "to mark, stake, locate or otherwise provide the position of the facility owner's underground lines at the work site within eighteen inches horizontally from the outside wall of such line **in a manner so as to enable the excavator, where appropriate, to employ prudent techniques**" (emphasis added), this court found it was Appellant's obligation to sufficiently mark and identify the location of their underground utilities in a manner free from ambiguity. Based on witness testimony and supporting evidence presented at trial, this court found that Appellant failed to fulfill its obligation. Appellant's own failure as a "facility owner" to properly mark and identify its underground facilities caused the damage to its property. When a "facility owner" fails to properly mark its lines as required by the One Call Act, it creates a risk of catastrophic injury. As a result, this court determined as a matter of credibility that Appellant did not comply with the terms of the Act and Appellee is not subject to liability for the property damage to Appellant's lines.

Thus, this court did not err as a matter of law and/or abuse its discretion in denying JNOV because Appellant failed to prove that it complied with its duties under the Act.

Trial Ct. Op. at 9-12 (footnotes omitted).

Following our review of the record, we discern no abuse of discretion or error of law by the trial court. *See Reott*, 7 A.3d at 835. The trial court thoroughly addressed Appellant's claims and concluded that because

- 7 -

Appellant failed to comply with the terms of the Act, Appellee was not subject to liability for the property damage to Appellant's lines. **See** Trial Ct. Op. at 9-13. Because we discern no abuse of discretion by the trial court, we therefore affirm based on the trial court's analysis of this issue. **See id.**

Judgment affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/28/2024