J-A12031-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JOHN BROWN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| GEORGE GAYDOS, AN INDIVIDUAL, | : | No. 1132 WDA 2021 |
| T/D/B/A GAYDOS CONSTRUCTION | : | |

Appeal from the Judgment Entered April 16, 2021
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  No. GD18-006991

BEFORE:   MURRAY, J., McCAFFERY, J., and COLINS, J.[*]

CONCURRING/DISSENTING MEMORANDUM BY McCAFFERY, J.:

**FILED: JULY 5, 2022**

I agree with the Majority's determination that the trial court erred in granting summary judgment in favor of Defendant based on employer immunity as set forth in Section 303(a) of the Workers' Compensation Act (WCA).[1] ***See*** Majority Memorandum at 11.   As the Majority cogently determines, the record contains a genuine issue of material fact concerning whether Defendant was Plaintiff's "employer" since he "did not directly employ Plaintiff and he did not exert exclusive control over ACS[.]" ***Id.***  However, I disagree with the Majority's disposition of Plaintiff's second claim, concerning

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 77 P.S. § 481(a).

the co-employee immunity provision set forth in Section 205 of the WCA.[2]  I conclude that under the facts presented here, the question of whether Defendant is immune from liability as Plaintiff's co-employee is a jury question.  Therefore, because I would reverse the court's ruling in *toto* and remand for trial, I respectfully concur and dissent.

When an injury is compensable under the WCA, Section 205 provides immunity from liability to co-employees whose negligent actions caused the claimant's injuries, so long as the injury occurred while the co-employees were "in the same employ" as the injured claimant.[3]   77 P.S. § 72.  **See Apple v. Reichert**, 278 A.2d 482, 485 (Pa. 1971) (explaining the WCA is "clearly phrased to protect all co-employes in all situations where negligent conduct of one employe may cause injury to a fellow employe, provided only that the injury in question is one that is compensable under the Act.").  As the Majority aptly observes, the term "co-employee" under the Act may include managers, executives, and even those who have an ownership interest in the employer. **See** Majority Memo. at 13.

Nonetheless,

> [t]he mere fact that both parties held positions of employment with the same employer at the time of the accident is not sufficient

---

[2] 77 P.S. § 72.

[3] Section 205 provides an exception for "intentional wrong[s]" — thus, co-employees cannot claim immunity from a civil action if they intentionally caused the claimant's injuries.  **See**  77 P.S. § 72.  Plaintiff does not contend that Defendant committed an "intentional wrong" in the present case.

to show that they were in the same employ at the time of the accident. Rather, the act or omission must occur while both employees are in the performance of their duties as employees. In order to establish immunity under the [WCA], the defendant is required to establish that [their] act or omission occurred while [they were] in the same employ as the plaintiff, that is, in the course of [their] performance of duties for the employer.

**Bell v. Kater**, 943 A.2d 293, 297–98 (Pa. Super. 2008) (citations and quotation marks omitted).

Here, the Majority concludes that "the evidence of record shows Defendant was acting 'in the course of [his] performance of duties for' ACS on . . . the date Plaintiff sustained his injuries" based upon the Defendant's deposition testimony that: (1) he brought the skid loader to that ACS job site on the morning of the accident "with the intention that he would personally operate [it] to assist in completing the ACS paving project[;]" (2) he left the skid loader at the site and went to "pay a vendor" for materials; and (3) he returned to the job site immediately after the accident. Majority Memo. at 15. The Majority also rejects Plaintiff's argument that he "did not sue Defendant in his capacity as an ACS worker[,]" characterizing it as "creative pleading" intended to "circumvent" the requirements of the ACT. **Id.** at 17. It further downplays the significant fact that Defendant instructed ACS workers **not** to use the skid loader, as well as the fact that the skid loader was owned, maintained, and insured by Gaydos Construction. **Id.** at 18-19. Rather, the Majority found the record was "devoid of evidence showing that Gaydos Construction was involved with the course of events that gave rise to Plaintiff's injuries." **Id.** at 19.

Upon my review, I conclude the record does **not** "clearly demonstrate[
] there is no genuine issue of material fact and that [Defendant] is entitled to
judgment as a matter of law." ***In re Risperdal Litigation***, 223 A.3d 633,
639 (Pa. 2019) (citation omitted). Rather, because there is evidence of record
that "would allow a fact-finder to render a verdict in favor of the non-moving
party, then summary judgment should [have been] denied." ***Zimmerman v.
Alexander Andrew, Inc.***, 189 A.3d 447, 452 (Pa. Super. 2018) (citation
omitted).

First, the cases upon which the Majority relies — where an executive or
manager was found to be immune from civil liability as a co-employee — are
clearly distinguishable on their facts.

In ***Jadosh v. Goeringer***, 275 A.2d 58 (Pa. 1971), the plaintiff, who was
injured at work while operating a lug cover press filed suit against, *inter alia*,
the vice president/general manager of the employer, responsible for the
"supervision of operations," claiming they had been "negligent in condoning
the use of a defective press." ***Jadosh***, 275 A.2d at 452-53. In determining
the manager was immune from liability under the WCA, the Pennsylvania
Supreme Court first noted that the WCA's definition of co-employee includes,
*inter alia*, "[e]very executive officer of a corporation[.]" ***Id.*** at 453 (citation
omitted). Moreover, the Court rejected the plaintiff's argument that the
statute was unconstitutional because it "insulates a co-worker from liability
without any corresponding financial responsibility placed on" them. ***Id.*** at
454. The Supreme Court opined:

In our opinion, a provision immunizing fellow employees from liability for negligent acts or omissions in the course of their employment is consistent with the constitutional provision permitting the enactment of a comprehensive scheme of workmen's compensation. The employee receives economic insurance that his employment-related injuries will be compensated. He surrenders the right to sue employers or fellow employees for negligence, but he no longer need prove negligence, his own contributory negligence is no longer a bar, and he, too, can no longer be sued for negligence by a fellow employee. Such a comprehensive program is not unconstitutional.

*Id.* at 454–55 (citation omitted).

In **Adams v. U.S. Air, Inc.**, 652 A.2d 329 (Pa. Super. 1994), the plaintiff sued his managers for intentional infliction of emotional distress and interference with contractual relations after they fired him following an internal investigation, which found he violated company policies. **See Adams**, 652 A.2d at 330. After concluding there was no evidence the managers acted with the intent to cause the plaintiff emotional distress or acted "outside the scope of their authority," a panel of this Court affirmed the grant of summary judgment in favor of the managers. *Id.* at 331. The panel opined:

[The managers] acted, pursuant to the duties of their employment, to investigate [the plaintiff's] activities on the employer's premises and whether they were violative of [the employer's] policies. For this there can be no liability against a fellow employee.

*Id.* at 330.

The Majority also relies upon **Vosburg v. Connolly**, 591 A.2d 1128 (Pa. Super. 1991), for the proposition that "a co-owner of a family construction company [is] a co-employee rather than an employer under the WCA."

- 5 -

Majority Memo. at 14. In that case, a panel of this Court determined that while the co-owner could "be characterized as an employee" of the company, they were, nevertheless, not entitled to immunity because they "committed an intentional assault" upon the injured employee. *Vosburg*, 591 A.2d at 1133. Thus, this Court reversed the order granting summary judgment in favor of the co-owner. *Id.* However, it is clear from a review of that decision, that the primary issue was whether or not the injured employee was acting "with the course of his or her employment" at the time the injury occurred, which was after the employee had "punched out and retreated to the parking lot of [the employer] to socialize with fellow workers[.]" *Id.* at 1129-30.

None of the cases relied upon by the Majority address the factual dilemma presented here — where an employee is injured while using a piece of equipment that is owned, maintained, and insured by a **separate sole proprietorship** operated by one of the co-owners. These facts are unlike those in *Jadosh*, where the allegedly defective piece of equipment was the property of the employer, and the plaintiff alleged the manager was negligent in simply performing their duties for the employer. *See Jadosh*, 275 A.2d at 452-53. The same is true of *Adams*, in which this Court rejected an employee's suit against their managers for merely acting "pursuant to the duties of their employment." *See Adams*, 652 A.2d at 330.

In the case *sub judice*, however, I conclude there is a genuine issue of material fact as to whether Defendant was acting within "the same employ" as Plaintiff at the time of Plaintiff's injury. *See* 77 P.S. § 72.

First, in his deposition, Defendant admitted he owned the skid loader in question, and that Gaydos Construction "covered the [insurance] policy on it[.]" Plaintiff's Motion for Summary Judgment, 3/3/21, Exhibit 2 at 43. Contrary to the Majority's characterization, Defendant did not definitively state that the skid loader would have been covered by ACS's insurance if it was used on an ACS job site. *See* Majority's Memo at 19. Rather, Defendant testified as follows:

> Q. Did [ACS] insure at any time the subject skid loader?
>
> [Defendant:] Under . . . our basic policy which I do not have in front of me, I'm sure that there was some sort of insurance on equipment for the contractor's liability policy for [ACS].
>
> Q. Do you know as we sit here today if [ACS] listed the subject skid loader on that policy?
>
> [Defendant:] I do not believe it was listed, but it is a tool.[4]
>
> Q. As we sit here today, do you believe the policy through [ACS] insured the subject skid loader?
>
> [Defendant:] I'm sure there was some sort of coverage for tools and equipment on job sites, so I couldn't tell you for certain. I don't have the policy in front of me.
>
> Q. So you don't know?
>
> [Defendant:] **I don't know.**

Plaintiff's Motion for Summary Judgment, Exhibit 2 at 42-43 (emphasis added). Defendant further acknowledged that "[t]he skid loader was **loaned** to [ACS] for contracting jobs[,]" and stated that he performed the maintenance on the skid loader himself. *Id.* at 44, 82 (emphasis added).

---

[4] I would not categorize a skid loader as a "tool," similar to a hammer or drill.

The Majority also emphasizes Defendant's deposition testimony that he and his partner agreed "they would each supply their personally owned tools and equipment as needed for ACS jobs" during ACS's infancy because the company did not have sufficient capital to purchase equipment. *See* Majority Memo. at 18. However, this purported agreement between the co-owners is not in writing. Moreover, Defendant acknowledged that he "loaned" the skid loader to ACS for certain jobs but stated there was "no lease" or "transfer of money." Plaintiff's Motion for Summary Judgment, Exhibit 2 at 44, 47. He also emphasized that the ACS employees understood he was to be "the sole operator of that piece of equipment." *Id.* at 49.

Further, we note the Majority **presumes** Defendant brought the skid loader to the job site on the morning in question for use on that particular ACS job. *See* Majority Memo. at 15, *citing* Plaintiff's Motion for Summary Judgment, Exhibit 2 at 45; Defendant's Reply Brief in Support of Summary Judgment, 3/8/21, Exhibit E-2 at 60. However, I conclude that "fact" is not clearly borne out in the record. Rather, in his deposition, Defendant testified, generally, that he had "loaned" the skid loader to ACS for concrete jobs on 15 occasions between April and September of 2016, and that on the morning of the incident, he arrived early, and then left to "go pay a vendor." *See* Plaintiff's Motion for Summary Judgment, Exhibit 2 at 44-45; Defendant's Reply Brief in Support of Summary Judgment, Exhibit E-2 at 60. He also stated that ACS employees were not to use the skid loader when he was not there, and "there was other work that could have been done" in his absence.

Defendant's Reply Brief in Support of Summary Judgment, Exhibit E-2 at 60. Therefore, in my opinion, the record contains a genuine issue of material fact as to whether Defendant actually intended to use the skid loader at the job site on the morning in question. For this reason, too, the court's entry of summary judgment was inappropriate.

The facts presented in this case are significantly different from those in which a co-owner or manager has been found to be a co-employee, and, therefore, immune from civil liability under the WCA. Here, the co-owner — Defendant — operated a separate sole proprietorship, that independently owned, maintained, and insured the allegedly defective skid loader which caused Plaintiff's injuries. Although Defendant may have "loaned" the skid loader to ACS free of charge, he made it clear that none of ACS's employees were to operate it. The Majority insists "a co-employee's immunity from an injured worker's suit at common law is based upon the **identity of the defendant**, **not the plaintiff's theory of the defendant's liability**." Majority Memo. at 17 (emphasis added; citation omitted). However, here, Plaintiff's theory defeats Defendant's identity as a co-employee.

Thus, under these facts, I conclude that the determination of whether Defendant was working "in the course of [his] performance of duties for the employer[,]"[5] ACS, is a question for the jury since Defendant admitted (1) his sole proprietorship owned, maintained, and insured the skid loader, (2)

---

[5] **See Bell**, 943 A.2d at 298.

Defendant loaned the skid loader to ACS for use on job sites, although it is not clear if he intended to use the skid loader at the job site in question, and (3) Defendant was the only ACS "employee" permitted to use the equipment, that he owned, maintained, and insured. Consequently, I would reverse the order granting ACS Defendant's motion for summary judgment and remand for further proceedings.